07-5103

TO:     Michael E. Kunz, Esquire, Clerk
        United States District Court, Eastern District
        601 Market Street, Philadelphia, PA 19106
        (215) 597-2093

                                    RECEIVED

DATE:   November 28, 2007
                                    DEC 0 4 2007

                                    Dep. Clerk

FROM:   Jesse Godfrey, Inst. No. BM-5499
        S.C.I. Graterford, P.O. Box 244
        Graterford, PA 19426


SUBJECT: PETITION FOR WRIT OF HABEAS CORPUS, UNDER 28 USC, 2254

## and CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT

(State Court Docket, No. CP 9007-1099 1/1)


Dear Mr. Kunz:

Enclosed herein you will find four (4) copies plus the
original (1) of the Petitioner's Petition for Writ of Habeas
Corpus, Under 28 U.S.C., § 2254, and Consolidated Memorandum
of Law in Support.

A copy (1) of the same has been served upon the respondent,
Thomas Dolgenos, Esquire, Chief, Federal Litigation, Office
of the District Attorney, at Three S. Penn Square, P.O. Box
3499, Philadelphia, PA 19107-3499, (215) 686-5725.

Please forward to me, at the above address, a TIME and
DATE STAMPED NOTICE OF the RECEIPT and FILING of the enclosed
Petition for Writ of Habeas Corpus, Under 28 U.S.C., § 2254,
and Consolidated Memorandum of Law in Support.

Prepared by Stanley Philly         Respectfully submitted

Encl. (5) copies 2254 and Memo of Law    Jesse Godfrey
Thomas Dolgenos, Esq.                     Jesse Godfrey, pro se
J.G./fl.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA *07-5103*

NO. _____

COURT OF COMMON PLEAS DOCKET NO. CP 9007-1099 1/1

JESSE GODFREY,

Petitioner

VS.

DAVID DIGUGLIELMO, et al.,

Respondent

PETITION FOR WRIT OF HABEAS CORPUS
UNDER 28 U.S.C., § 2254
AND CONSOLIDATED MEMORANDUM OF LAW

PETITIONER IS PROCEEDING
PRO SE

JESSE GODFREY
NO. BM-5499
S.C.I. Graterford
P.O. Box 244
Graterford, PA 19426

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| INTRODUCTION | .......................................... | 1 |
| PROCEDURAL HISTORY OF CASE | ............................ | 2 |
| THE SCOPE AND STANDARD OF REVIEW | ...................... | 3 |
| ARGUMENT | .............................................. | 3 |

I.    DID THE COURT PROSECUTE AN INCOMPETENT, WHO COULD IN NO WAY KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVE HIS RIGHT TO A TRIAL?

II.   WHETHER THE PETITIONER BEING INCOMPETENT WHEN HE WAIVED HIS RIGHT TO A TRIAL CONSTITUTES A MANIFEST INJUSTICE WHICH NO CIVILIZED SOCIETY CAN TOLERATE?

CONCLUSION ...........................................

AFFIDAVIT

CERTIFICATE OF SERVICE

| | |
|---|---|
| JESSE GODFREY, | : |
| Petitioner | : |
| | :    No. _____ |
| VS. | : |
| | :    State Court Docket |
| DAVID DIGUGLIELMO, et al., | :    CP 9007-1099 1/1 |
| Respondent | : |

PETITION FOR WRIT OF HABEAS CORPUS
UNDER 28 U.S.C., § 2254
AND CONSOLIDATED MEMORANDUM OF LAW

TO THE HONORABLE JUDGES OF THE ABOVE SAID COURT:

Petitioner, Jesse Godfrey, pro se petitioner, hereby moves this Honorable Court to issue a Writ of Habeas Corpus as to the State Court's Judgment, at No. CP 9007-1099 1/1, accepting a Waiver of the Right to a trial by an incompetent, and imposing a sentence of Life without parole, for the charges of Second Degree Murder, Burglary, Robbery, and Possession of an Instrument of Crime, on February 14, 1994.

### INTRODUCTION

The right to a public trial, and an impartial jury is at the foundation of the basic tenants of this country's legal system and is guaranteed by the Sixth Amendment of the United States Constitution. The waiver of this fundamental and substantive right is not taken lightly and must be given close and careful scrutiny. Particularly so when the waiver is tendered by an incompetent defendant. The court, in this case, in accepting the waiver should have take every precaution to safeguard the defendant's rights and ensure that he fully understood the important right he was waiving.

- 1 -

The State court in this case cannot, in good conscience and based on the record, uphold that this petitioner clearly understood this important Constitutional right that he allegedly, knowingly, intelligently and voluntarily waived.

## PROCEDURAL HISTORY OF THIS CASE

On April 30, 1991, the petitioner allegedly, knowingly, intelligently and voluntarily, waived his right to a jury and was tried by the Honorable Theodore McKee. The petitioner was found guilty and after post-verdict motions were denied on February 14, 1994, he was sentenced to Life imprisonment for second degree murder.

As a result of the petitioner's incompetence, he untimely filed a Notice of Appeal on May 1, 1997, and on June 30, 1998, the State Superior court affirmed judgment at No. 1865 Philadelphia 1997. On March 2, 2000, a pro se P.C.R.A. Petition was filed. The State court dismissed the petition as untimely on April 24, 2001. The petitioner filed an untimely appeal on June 5, 2001, which was denied.

A request was made in December 2001, to reinstate appellate rights, was granted on January 15, 2002 and counsel was appointed. The reinstated appeal was dismissed without prejudice, due to counsel, Richard Hoy, Esquire, failing to timely file the appellant brief.

A second pro se P.C.R.A. Petition was filed on January 30, 2003, and counsel, Scott Griffin, Esquire, was appointed. Counsel correctly assigned ineffective assistance to prior counsel for failing to file the appellant brief. On October 14, 2003, even though it was clear that the ineffective claim of prior counsel failing to file the brief was of arguable merit, the P.C.R.A. Petition was dismissed.

On December 10, 2003, an appeal to the State Superior court was filed. That court dismissed the appeal for failure to file a brief on June 22, 2004, at No. 3754 EDA 2003.

## THE SCOPE AND STANDARD OF REVIEW

The Scope of Review is Plenary. The Standard of Review, generally, 28 U.S.C., § 2254 (a) ... a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is custody in violation of the laws of the United States or the Constitution; § 2254 (d) An application for a Writ of Habeas Corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or (2) resulted in decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings; and § 2254 (e)(1) ... The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

## ARGUMENT

I. DID THE COURT PROSECUTE AN INCOMPETENT, WHO COULD IN NO WAY KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVE HIS RIGHT TO A TRIAL?

The scope of Review of this claim is Plenary. The general standard of Review is found in 28 U.S.C., § 2254(a), and 28 U.S.C., § 2254(1) & (2), and 28 U.S.C., § 2254(e)(1).

- 3 -

1. Our United States Supreme Court held in Pate v. Robinson, 383 U.S. 375, 386-87, 86 S.Ct. 836, 842,43 (1966), "if the trial court received evidence, viewed objectively, which raises a reasonable doubt as to competence, yet fails to make further inquiry, the defendant is denied a fair trial."

This is what has occurred in this case, the trial record, attached as the Appendix,                    , , indicates that, to any reasonable person viewing the proceeding, "there was a reasonable doubt as to competence". However, the court "fails to make further inquiry". As a result of this failure by the trial court the petitioner has been "denied a fair trial".

Our United States Supreme Court decided in, Drope v. Missouri, 95 S.Ct. 896, 903-04 (1975), "where there is a reason to doubt the defendant's competency, the trial court is required to conduct a competency hearing."

Based on the circumstances of the case and the testimony as to the petitioner's school and mental health records, April 30, 1991 Transcript of Jury Waiver, pg. 5-7. It was evident the petitioner appeared to be incompetent and since no other evaluation had been made as to the petitioner's competency, the District attorney read into the record the only evaluation available.

April 30, 1991 Transcript of Jury Waiver, pg. 8-9
"There is a further report of June 26, 1989. This is also from the Mental Health Unit by Dr. Saul, Court psychiatrist, finding the defendant at that time was psychotic. Is incompetent to proceed with legal process at that time." The trial court in this case, based on Dr. Saul's opinion, had a responsibility to safeguard the petitioner's right to a fair trial and it did not.

- 4 -

2. In expected that the State would argue that the petitioner has procedurally defaulted this claim. However, the petitioner relies on the ruling of the State's Highest court, quoting our United States Supreme Court's holding that, "claims of incompetence are subject to no-waiver rule", Commonwealth v. Marshall, 318 A.2d 724, 727 (1974), quoting, Pate v. Robinson, 86 S.Ct. 836, 841 (1966).

3. Not only has the State's Highest court and our United States Supreme Court held that "where there is a reason to doubt the defendant's competency, the trial court is required to conduct a competency hearing", State Statute also requires a determination of competency, see 50 P.S. § 7402(e)(4), "A report shall be submitted to the court and to counsel and shall contain a description of the examination." The court in this case, even in light of the petitioner's school and mental health history, failed to order an evaluation until after the jury waiver, finding of guilt and imposing of sentence,

The record is clear, the petitioner's could have in no way knowingly, intelligently, and voluntarily, waived his right to a jury. See Appendix, April 30, 1991 Transcript of Jury Waiver, pgs. 41 to 59.

Accordingly, following our United States Supreme Court's holding in Pate v. Robinson, 383 U.S. 375, 386-87, 86 S.Ct. 836, 842,43 (1966), "if the trial court received evidence, viewed objectively, which raises a reasonable doubt as to competence, yet fails to make further inquiry, the defendant is denied a fair trial."; and, Dropa v. Missouri, 95 S.Ct. 896, 903-04 (1975), "where there is a reason to doubt the defendant's competency, the trial court is required to conduct a competency hearing.", see Appendix, April 30, 1991 Transcript of Jury Waiver, pg. 117.

- 5 -

The petitioner in this case has shown that he is in State custody in violation of the laws of the United States. Pate v. Robinson, and Drope v. Missouri, supra., 28 U.S.C., § 2254(a). The State court's decision was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States, and, resulted in decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings, 28 U.S.C., § 2254(a)(1) and (2). The State court transcript of this matter is clear and convincing evidence, even viewed in a light favorable to the verdict winner, rebuts the State court's presumption of correctness as to its judgment, 28 U.S.C., § 2254(e)(1). The Writ should be granted and the judgment of the State court vacated.

II.  WHETHER THE PETITIONER BEING INCOMPETENT WHEN HE WAIVED
     HIS RIGHT TO A TRIAL CONSTITUTES A MANIFEST INJUSTICE
     WHICH NO CIVILIZED SOCIETY CAN TOLERATE?

The review of this claim also requires a Plenary scope of Review and the application of 28 U.S.C., § 2254(a), 28 U.S.C., § 2254(1) & (2), and 28 U.S.C., § 2254(e)(1).

The petitioner, in claim "I", has set forth a cognizable claim that he was incompetent during the State court proceedings of the jury waiver, and that he could have in no way knowingly, intelligently and voluntarily waived his substantive constitutional right to a jury trial.

1. A State court's judgment that relies on proceedings like the process that took place in this case, is of such a nature as to offend the basic norms of a fair judicial process.

- 6 -

Necessarily, "the principles of comity and finality that inform the concepts of cause and prejudice must yield to the imperative of correcting a fundamentally unjust incarceration, as this petitioner is suffering. This concept is what constitutes a finding that a "manifest injustice" has occurred. The esteemed Justice Holmes stated, "what we have to deal with is not the petitioners' innocence or guilt but solely the question whether their constitutional rights have been preserved".

This case also requires the application of, Lines v. Larkins, 208 F.3d 153, 160 (3rd Cir. 2000), "The exhaustion of State remedies requirement is excused when resort to State courts would be futile."

2. Although a definitive holding as to what a "manifest injustice" is has not been agreed upon. Blacks Law Dictionary, Eighth Edition defines it as, "An error in the trial court that is direct, obvious, and observable." It is also defined as a Manifest error, which is, "An error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record."

See, Lee v. Kemna, 534 U.S. 362, 376, 122 S.Ct. 877 (2002), "exceptional cases" may arise when to prevent manifest injustice, a procedural default should not bar federal habeas review."

3. The obvious error rule "requires the reviewing court to make a penetrating inspection of all the circumstances of the trial to determine whether there exists a seriously prejudicial error tending to produce manifest injustice", State v. Lambert, (Me) 528 A.2d 890).

That error occurred when the State court held a proceeding and accepted this petitioner's jury waiver.

At page 8, of the Appendixed April 30, 1991 Jury Waiver
Transcript, the court heard the following testimony;

"In addition, history of drug and alcohol dependence. The
defendant has a major mental illness" ....; "he was brought
in for evaluation, complaining of auditory hallucinations and
suicidal inclinations. He was hospitalized on June 23, 1989,
complaining of hearing voices and feeling suicidal. Diagnostic
impression, paranoid type, substance abuse, alcohol addiction."

However, even after hearing such probing determinations
by examining psychiatrist and clinical psychologist, the court
did not find the need to request a mental evaluation to determine
competency. Even though during the entire proceedings no other
record of a current mental evaluation was given other than the
1989 evaluation. This was a seriously prejudicial error on the
part of the trial court, tending to produce a manifest injustice.

Our United States Supreme Court has held, "The controlling
consideration must be whether the petitioner was denied
fundamental fairness in the State court proceeding ... which
enables the federal writ to grant relief in cases of manifest
injustice, Murray v. Carrier, 106 S.Ct. 2639, 2648 (1986). In
this case the record supports that the petitioner "was denied
fundamental fairness in the State court proceeding" and it is
also abundantly clear from the record of the State court
proceedings, that because of the denial of fundamental fairness
in the State court proceedings, the petitioner is suffering
a manifest injustice and the Writ should be granted.

The petitioner has met this Court's Standard of Review
for this claim. He clearly "is in State custody in violation
of the laws of the United States".

The State court's determination of the Jury Waiver hearing was "contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States", and it resulted in "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings". The presumption of the correctness of the State court judgment has been rebutted by that court's own record.

Based on the herein, the petitioner requests that Honorable grant the petitioner's Petition for Writ of Habeas Corpus and Order a New Trial or in the alternative, set a date for a Hearing on the petitioner's claims.

Date: November 28, 2007                Respectfully submitted,

                                       *Jesse Godfrey*

                                       Mr. Jesse Godfrey
                                       Petitioner, pro se
                                       Inst. No. BM-5499
                                       S.C.I. Graterford
                                       P.O. Box 244
                                       Graterford, PA 19426

Prepared by: *Stanley Phillips*

# APPENDIX

## TABLE OF CONTENTS OF APPENDIX

APPENDICES                                                    REF. PAGE

JURY WAIVER HEARING TRANSCRIPT OF APRIL 30, 1994        4
Page 5 through 7

JURY WAIVER HEARING TRANSCRIPT OF APRIL 30, 1994        4
Page 8 to 9

JURY WAIVER HEARING TRANSCRIPT OF APRIL 30, 1994        5
Pages 41 through 59

JURY WAIVER HEARING TRANSCRIPT OF APRIL 30, 1994        5
Page 117

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

CRIMINAL TRIAL DIVISION

- - -

COMMONWEALTH : JULY TERM, 1990

: NO. 1099 – Murder
  Voluntary Manslaughter
: NO. 1100 – Involuntary
  Manslaughter
VS. : NO. 1101 – Burglary
  Theft, RSP
: NO. 1102 – Robbery
: NO. 1103 – Possession of
  Instrument of Crime
: Generally and Possession of
JESSE GODFREY : a Crime, Weapon

- - -

JURY WAIVER

- - -

Room 446, City Hall

Philadelphia, Pennsylvania

- - -

April 30, 1991

- - -

BEFORE: HONORABLE THEODORE A. MC KEE, J.

PRESENT: JOSEPH MC GETTICAN, ESQUIRE
Assistant District Attorney
For the Commonwealth

GERALD STEIN, ESQUIRE
Counsel for the Defendant

Exhibit D-1, that this is a pill bottle that
belongs to Jesse Godfrey.

The notation on the label is for
Triavil. The date is 4-6-90, for one tablet
in the morning, two at bedtime, Dr. C. Guy,
the prescribing physician. The prescription
was filled at the North Broad Pharmacy.

With the stipulations as to the records,
the stipulations would be that if the custodian
of the records of the various institutions were
called here to testify, that they would testify
that these are records which are kept in the
normal course of their business and these are
accurate records of various institutions
regarding the defendant Jesse Godfrey.

THE COURT: Okay.

I could take a recess to review those
records. Perhaps you can summarize them.

MR. STEIN: We would first focus the
Court's attention on the school records,
indicating that as of 1971, Mr. Godfrey was
placed into an R.E. Unit, a retarded educable
setting in the Philadelphia School District,
and continuing in that status until 1978.

As to the December 15, 1989 admission

to Giuffre Medical Center, we would focus
the Court's attention also on the fact that
the Social Security number is different than
that which is contained in the police
biographical material.

That he was admitted for cocaine and
alcohol dependency. That he was described
as smoking cocaine on a daily basis. That
he had a prior detoxification history at the
Livingran Foundation. It's up in Bucks
County. It's a substance abuse center.
Bucks County Courts are much more familiar.
They have an arrangement with their drunk-
driving program and so forth.

The report indicates daily use of
cocaine and inability to control the
dependency. Alcohol use of up to a half-
gallon of wine per day. Blackouts,
secondary to alcohol use as well as
tremors advocation and other withdrawal
symptoms secondary to alcohol dependence.

It also describes the history of a
suicide attempt by setting a fire, setting
himself on fire at his mother's house which
resulted in arson charges.

There is a 3-30-90 Giuffre Medical Center admission record. Again, principal diagnosis on admission, cocaine dependency. The admitting diagnosis: Cocaine dependency indicates the admission of a twenty-eight year old white male. This was pointed out, by the way, to my investigator, that that was in error. It should not, obviously read "white male" but it is this man's records. $100.00 a day cocaine dependency and the use of a quart of wine on weekends.

Psychiatric assessment revealed chronic paranoid schizophrenia by history but no acute psychiatric emergency at that time. The rest of the report, again, is the chemical blood test.

Your Honor, D-5 is the Hahnemann Correctional Mental Health Services Program, the reports on this defendant which begins shortly after his arrest on these charges. Obviously, it refers to a course of treatment while incarcerated, beginning on June 4, 1990.

There is also included in this packet of materials, a previous mental health evaluation dated 10-26-89 by Dr. Robert Stanton, M.D., a

psychiatrist with our mental health unit, with a diagnostic formulation of schizophrenic reaction, paranoid type, partially in remission. In addition, history of drug and alcohol dependence. The defendant has a major mental illness in partial remission and appears capable of standing trial at that time. That is the report that related back to the previous case, the arson case in October of 1989.

There is also an August, 1989 report from the Hahnemann Unit addressed to the late Judge Bednarek, indicating that when he was brought in on June 22, 1989 he was brought in for evaluation, complaining of auditory hallucinations and suicidal inclinations. He was hospitalized on June 23, 1989, complaining of hearing voices and feeling suicidal. Diagnostic impression: Schizophrenia, paranoid type, substance abuse, alcohol addiction.

There is a further report of June 26, 1989. This is also from the Mental Health Unit by Dr. Saul, Court psychiatrist, finding the defendant at that time was psychotic. Is

incompetent to proceed with legal process
at that time. A discharge summary relating
to that, which I just mentioned, dated July 11,
1989: Again, the discharge diagnosis,
paranoid schizophrenia. He was discharged
to the general prison population and received
ongoing out-patient treatment.

There is a second copy of the same
report.

We move for the admission of the records
and the exhibits and we rest.

THE COURT: The exhibits will be
received.

MR. MC GETTIGAN: If I may, briefly,
I think it's incumbent upon me to point out
certain elements of the records which Mr.
Stein has introduced and I have already
mentioned to the Court but made reference to
in part.

With regard to the evaluation of the
defendant done on 10-26-89, Dr. Stanton
remarked with regard to the mental health
status examination, that on the interview
with the defendant, he was alert, polite,
cooperative. He is oriented as to person,

THE COURT: I probably would have to
colloquy the defendant on that.

MR. STEIN: May we have just a minute.

(Counsel confers with Defendant Godfrey.)

MR. STEIN: We are ready.

THE COURT: You may swear in Mr. Godfrey.

THE COURT CRIER: State your full name
and spell it.

. . . JESSE GODFREY, 906 West Susquehanna
Avenue, Philadelphia, Pennsylvania, sworn.

- - -

WAIVER COLLOQUY

- - -

BY THE COURT:

Q. Mr. Godfrey, I have to have a discussion with you and ask
you several questions. The reason for my questioning will be
that I need to make certain that you understand the rights that
you will be giving up proceeding to trial without having a jury
hear your case. There is another part of this that I need to
explain to you that I will do in a second. But it's very
important that you understand that if I say anything that you
do not understand, if you would please stop me and feel free to
discuss anything with Mr. Stein, your lawyer.

Also, if you want me to repeat or rephrase
any question that I ask of you, please do that. Please ask me

to repeat it.  Don't answer a question that you don't understand.

Do you understand that, Mr. Godfrey?

A.    Yes.

The reason I need to go through this is, again, so that I can be sure that you understand the rights that you are giving up by not having a trial by jury.

Do you understand that?

A.    Yes.

Q.    How old are you?

A.    Twenty-nine.

Q.    We have already established that the school you went to was not a graded school but you apparently completed the equivalent of around the tenth grade; is that right?

A.    What?

Q.    You completed the equivalent of around the tenth grade in school?

A.    R.E.

Q.    Well, I understand that.  That is your classification.

How old were you when you left school? Do you remember?

A.    About sixteen or seventeen.

Q.    And you were classified as retarded educationally?

A.    Yes.

Q.    You do not read, write and understand all that well?

A.    Yes.

Q.    There is a written form that I want you to take a look at. I will ask Mr. Stein to read that form to you.

That form is going to have on it a very brief outline of what I am going to describe to you in detail. If you have no problem, no objection or no disagreement with what is on that form in terms of the rights that you are willing to give up, if you will sign it, the attorney will sign it, the assistant district attorney will sign it and I will sign it.

First of all, do you understand, Mr. Godfrey, that you have an absolute right to proceed to trial by jury if you want to?

A.    (Nods head.)

Q.    You are nodding.  You have to answer.

A.    Yeah.

Q.    Today, is it your understanding that you want to give up your right to a trial by jury and have your case heard by a judge sitting without a jury?

A.    (Nods head.)

Q.    Again, you are nodding.  Say that out loud.

A.    Yeah.

Q.    Did anybody force you or coerce you to have you give up your right to a trial by jury?

A.    No.

Q.    Do you understand what the word "coerce" mean?

A.    No.

Q.    If I use a word that you don't understand, don't answer the question. I just asked you if anybody forced you or coerced you. You said nobody had but then you told me you don't understand what the word "coerce" means. Coerce is another way of saying force.

Are you doing this of your own free will, giving up your right to a trial by jury?

A.    Yes.

Q.    Has anybody promised you anything, in terms of giving up your right to a trial by jury?

A.    No.

Q.    When I say you have an absolute right to a trial by jury, I mean just that. That no one other than yourself in consultation with your attorney can determine that you are not going to have a jury trial. I cannot do that. The Commonwealth of Pennsylvania cannot do that. It's totally up to you after consultation with your attorney.

Do you understand that?

A.    Yeah.

Q.    Are you satisfied with your attorney's advice and representation so far?

A.    Yeah.

Q.    Do you feel that you have had enough time to discuss this with him?

A.    Yeah.

Q.   That he knows about the case everything that you want to
tell him about your case?

A.   Yeah.

Q.   Now, it's clear to me that you are saying, you have decided
that you want to give up your right to a trial by jury.

                    Let me take a few moments and explain to
you in some detail what a trial by jury involves, so that again
I can be sure that you understand what you are giving up.  If
you wanted to have a trial by jury, what would happen would be
that we would select a jury of around, approximately twelve
people to hear your case and the way we would select a jury would
be that we would first call downstairs to the room where everybody
who is on jury duty is assembled.

                    Do you understand that?

A.   (No response.)

Q.   Do you understand that?

A.   Yeah.

Q.   And those are people who have been selected at random from
Philadelphia County's voting rolls.  When I say at random, I
mean, basically picking names out of a hat except the computer
does it, picking names off the voting rolls.

                    The people who are on jury duty represent
a cross-section of Philadelphia County in terms of age, race,
educational background, employment history, male, female, would
be roughly even.  We would then ask from all those people who are

on jury duty, forty people be picked at random. Those forty

people would come to the room and we would pick your jury of

twelve from those forty people who come into the courtroom.

Do you understand?

A.    Yes.

Q.    The way we would pick the jury of twelve would be, I would

explain certain legal principles to them and then I would ask

questions of them. And the questions that I would ask of them

have two different purposes. One of my sets of questions would

be designed to get at the understanding of and willingness to

be guided by those legal principles that each of the jurors have.

Do you understand that?

A.    Yes.

Q.    After I explain the legal principles, I would ask questions

of the potential jurors to be sure they understand those

principles and their willingness to be guided by if they were

to be on the jury. Then I would ask background questions to get

background information from each of the people who may be picked

to be on the jury so that I and your attorney and the assistant

district attorney can determine whether or not there is something

about that individual that would suggest to us that that person

should not be on the jury.

1 would explain that a person who is

charged with a crime is presumed to be innocent of that crime.

And that Mr. Godfrey, yourself, the fact that the Commonwealth

has brought charges against you does not mean anything. It means that they are going to try to prove those charges. Maybe they will be able to, maybe they will not be able to. I will explain to the potential jurors, the fact that you have been brought in on these charges does not mean that you are guilty of anything. But that the district attorney have to prove you are guilty. You do not have to prove yourself innocent. That would mean that you do not have to testify. You will not have to call witnesses unless you decide you want to do that. If you wanted to do those things, you would before a jury and even before just a judge, you have an absolute right to do those things but you don't have to. I would explain that the failure to do those things could not be used against you.

Do you understand all that?

A. Yes.

Q. Let me ask you a question so that I can be sure you understand.

Let's assume that during the course of the jury selection, I asked questions to the jury, as I would, and one of the questions I asked to the panel, people who come to the courtroom for jury selection is the following: Let's assume that I asked, "If Mr. Godfrey did not testify during the course of his trial, would any of you hold that against him? Would any of you feel that you needed to hear his side in order to decide this case?" And let's assume that one person stood up

and said, "Yes, I would have to hear what Mr. Godfrey had to say about this," is that somebody who should be allowed to sit on your jury? What do you think?

A.    Say that again.

Q.    Is that person somebody who should be allowed to sit on your jury, somebody who would say I have to hear from Mr. Godfrey what he thinks about this otherwise I would be inclined to think he was hiding something from me.

A.    No.

Q.    That is right. The reason is, you have a right to testify. So if that person stood up and answered my question that way, that is somebody who would not be allowed to sit on your jury.

                    Do you understand that?

A.    Yes, sir.

Q.    I would also ask questions, whether or not anyone has been a victim of a crime, whether or not anybody knows any of the witnesses in the case; whether anybody is a police officer or a security guard or anything of that sort so that I can get background information or the attorneys can get background information. Your attorney and the district attorney could also ask questions of the person who was brought in for jury duty in this case and at the end of the questioning, under the law you are allowed two different mechanisms of keeping somebody off your jury. Mechanisms means there are two different ways to keep someone off your jury. The names are not important but I

will mention the names in passing, to kind of keep this straight. One is called the challenge for cause. All that means is that if you or your attorney or the district attorney believes that someone in that group of potential jurors that we are picking a jury from are not going to be a proper juror under the law, then you can say to me, "Judge, I move to excuse that person because there is cause to believe that the person is not going to be a proper juror."

An example of that would be what we just discussed. If someone stood up and said, "I have to hear Mr. Godfrey's side of this thing," you could - - in fact, you would not have to. I would do it. I would stop the person and answer the question. But if I didn't, you could argue through Mr. Stein that that person should be excused. You can't let them sit on the jury because he is not going to be fair. If he sits on a jury, he is going to require my client to testify and under the law he does not have to. Don't let him sit on the jury. I would agree with that and the person would be excused from jury service.

Do you understand that?

A. Yes.

Q. Under the law there are no limits as to how many people you could excuse from service on your jury in that manner.

Do you understand that, in theory? Do you understand what I mean by in theory?

A.    No.

Q.    It means it's possible that all forty of the people who
came into the courtroom that we were going to pick the twelve
jurors from could be excused because after being interviewed,
each one of them would say something that would cause me to
believe there was a reason to believe that they were not going
to be fair to you or to the Commonwealth and all forty of them
would be sent back downstairs. We will call downstairs and have
them send forty more people up here.

                    Do you understand that?

A.    Yes.

Q.    The other way we can excuse people or keep people from
being selected to sit on your jury is by what we call a
peremptory challenge. The name is not important.

                    What that means is under the law, you
and the district attorney are both allowed up to seven
opportunities to keep someone from sitting on your jury for any
reason whatsoever, no matter how they answer my question. There
is something that says they don't believe what they are saying,
maybe they are lying, or even if you think they are telling the
truth, you don't trust them. Maybe the part of the city they
live in, maybe the way they looked at you when they came into
the courtroom; anything at all about that person that says to
you that you don't want them on the jury. You can keep them from
sitting on your jury but you can only do that up to seven times.

After that, you have to give me a reason and it has to fall into
that other category of strikes or challenges that I just discussed
with you in order for the person to be excused.

Do you understand all that?

A.    Yeah.

Q.    You hesitated for a second.  If you don't understand that,
let me know.

A.    No.

Q.    Don't say you do understand if you don't.

A.    Okay.

Q.    What I am trying to tell you is when we select a jury,
there are two ways that we can keep somebody from sitting on the
jury.  Again, when we select a jury we are trying to find twelve
people to sit on that jury.  And we do it by interviewing people
selected at random.

Do you understand that?

A.    Uh-uh.

Q.    Okay.  What part of that don't you understand?  Let me ask
you a question.

The people we would be interviewing to
sit on your jury are those people who would be chosen by chance
or random.

A.    I understand.

Q.    I am sorry.  I can't hear you.

A.    Yeah.

Q. Try to speak up.

What I am telling you is as we are interviewing people, we don't just have to take the first twelve people. We interview forty people and as we go through the interview, under the law, you can keep certain of those people that we interviewed from being selected to sit on your jury.

Do you understand that?

A. Yes.

Q. There are two different ways to do that. One is saying to me, "Judge, one or more of the people that you have talked to has no business sitting on the jury because they have answered your questions in such a way as to suggest to you that that person can't be a proper juror." And that is the example I have discussed with you, with someone standing up and saying, "I have to hear from Mr. Godfrey before I can decide this case."

Do you understand that?

A. Yes.

Q. If that were to happen, that is somebody that I would excuse from sitting on your jury. And under the law, you through your lawyer, or the district attorney can argue to me that anyone should not be allowed to sit on the jury based upon the answers that they give to the questions that I have asked during the selection process.

Do you understand all of that?

A. Yes.

Q. Under the law, there is another way to keep somebody off your jury, even if somebody answers all of the questions that I ask, your lawyer or the district attorney asks, in such a way to suggest that they are going to be fair. You don't have to be stuck with those answers. Maybe the person when they are being interviewed would be the best juror you can imagine in terms of how they answered the question. They say they can be fair to both sides. They say that they can presume that you are innocent and they will not convict you unless the Commonwealth comes in here with enough testimony to convince them of your guilt beyond a reasonable doubt. They give all the right answers. But you don't believe them.

Under the law you don't have to be stuck with that person's answers because the law says that you can excuse somebody, or ask me to keep them off your jury for any reason whatsoever. But there is a limit as to how many times you can do that.

Do you understand that?

A. Yes.

Q. The reason for the limit is that we would never get a jury. You could just excuse anybody forever, from sitting on the jury. The law says that you can only do that seven times. And the district attorney has the same right. He can excuse anybody, up to seven times.

Do you understand that?

A.    Yes.

Q.    Okay.   That is what I am trying to explain.

Once we get a jury, we get twelve people to sit on your jury.   At a jury trial, you can't be convicted unless everybody on your jury is convinced of your guilt beyond a reasonable doubt.

Do you understand that?

A.    Yes.

Q.    Let me go through it one more time because I am going to ask you two questions about it.

You can't be convicted at a jury trial unless everybody on your jury is convinced of your guilt beyond a reasonable doubt.   Let's assume that you were to have a jury trial.   Let's assume that after that trial, ten of the people on the jury thought that you were guilty beyond a reasonable doubt, two of the people thought that you were not guilty.   Should you be convicted, in that situation by that jury?

A.    Say that again.

Q.    Do you understand my question?

A.    Say that again, that last part.

Q.    Let's assume that you were to have a jury trial.   Let's assume that after the jury trial, ten of the people on the jury thought that you were guilty, two of the people thought that you were not guilty.   Would you be convicted by that jury?

A.    I understand.

Q.    Let me repeat the principle again.

You wouldn't be. Under the law, at a
jury trial the district attorney has to convince everybody on
your jury that you are guilty and they have to convince everybody
beyond a reasonable doubt that you are guilty.

Do you understand that?

A.    Yes.

Q.    Unless he can convince all twelve people beyond a reasonable
doubt, you cannot be convicted in a jury trial.

Do you understand that?

A.    Yes.

Q    So what would be the answer to my question. If ten people
thought that you were guilty and two people thought that you were
not guilty, would you be convicted?

A.    No.

Q.    This is a harder question.

What if everybody on the jury thought
that you were guilty. Eleven of them are convinced beyond any
doubt whatsoever, clearly they are convinced beyond a reasonable
doubt. One of the people on the jury thinks you are guilty, but
has a reasonable doubt about that. Should you be convicted by
that jury?

A.    No.

Q.    That is exactly right because they are to convince everybody
beyond a reasonable doubt. That is exactly right.

At a judge trial, what basically happens

is they still have to prove their case beyond a reasonable doubt.

Now, how many people do they have to convince at a judge trial?

A.    One.

Q.    That's exactly right.  One person.

MR. STEIN:  Just for the record, he

pointed at you.

BY THE COURT:

Q.    That's right.  You understand all of that.

I just sat through a suppression hearing.

Do you understand what I mean by a suppression hearing?

A.    No.

Q.    That is what we did today when the detectives testified

about what they stated was your statement.  You testified and

said that you didn't give them a statement and I ruled a few

minutes ago that I basically believed the detectives.  I did not

believe what you were testifying to.

Do you understand that that is what I

ruled?

A.    Yeah.

Q.    Now, by going to trial before me, you are basically going

to trial before a judge who has already heard your testimony

and rejected it as not being trustworthy.

Do you understand that?

A.    Yes.

Q. You have a right to ask me what we call recusing myself.
You have a right to say, "Judge, you have already, one, heard
my testimony and, second, you don't believe what I was testifying
to. I have a right to testify at trial. I don't want to have to
do that in front of you. I want you to send my case to a
different judge for trial."

By proceeding to trial before you, you
are giving up and waiving your right to ask me to recuse myself
and send you to a different judge.

Do you understand that?

A. Yes.

Q. Is that something you are willing to do? Do you want me to
hear your case or do you want a different judge to hear your
case?

A. I want you.

Q. Have you talked to Mr. Stein about that?

A. Yes.

Q. Are you comfortable with his advice about that?

A. Yeah.

Q. Has anybody forced you or coerced you to give up your right
to ask me to recuse myself?

A. No.

Q. I want you to tell me what recusal means? What does the
word "recusal" mean?

A. I don't know.

Q.    Again, if you don't understand a question, tell me.

A.    I don't understand.

Q.    Recusal is when I talked about your right to ask me to step down and send this case to a different judge. We call that whole process recusal. Meaning, there is something about this case that one judge would say it's better for a different judge to hear your case. You have a right to ask me to do that and you are giving up that right today.

                    Do you understand that?

A.    Yes.

Q.    And you are willing to do that?

A.    Yes, sir.

                    THE COURT: What is the level of the

                    homicide you are proceeding on?

                    MR. MC GETTIGAN: Your Honor, it's a

                    potential first-degree murder.

                    THE COURT: Is there anything else that

                    I left out?

                    MR. STEIN: No.

BY THE COURT:

Q.    Mr. Godfrey, I am going to ask you to take a look at this waiver form that I mentioned a few moments ago. Mr. Stein will read that over to you. It is a brief summary of what I have just discussed.

                    (A break was taken.)

MR. MC GETTIGAN: The Court has the waiver form before you. I would ask that the record reflect that the defendant has consulted both with his attorney and with two family members during the short break.

THE COURT: That is correct.

Mr. Godfrey has spoken with his attorney and - -

MR. STEIN: His mother and sister.

THE COURT: The waiver form has been signed. Actually, there is an X there. I assume that's Mr. Godfrey's signature.

MR. STEIN: Your Honor, Mr. Godfrey signed the waiver of jury trial form in my presence and his name appears on the line for the defendant's name, that he put his name there in my presence. I then signed after he signed and Mr. McGettigan.

THE COURT: I signed and I accept the waiver as being voluntarily entered into and intelligently, and ask that it accordingly be put into the Quarter Sessions file.

MR. STEIN: We would ask the Court to allow us to waive arraignment and enter pleas of not guilty to the charges.

117

THE COURT: On Bill 1099, I sentence
the defendant, as required, to a mandatory
term of imprisonment of life. This will be
an interim sentence.

Do you have a sentencing date?

THE COURT CRIER: June 26.

THE COURT: The matter will be
continued for final sentencing and/or
post-verdict motions to June 26.

I will hold sentencing on 1101,
1102, and 1103. Realistically speaking,
I have not seen a pre-sentence report but
I cannot imagine that there will be
consecutive time here.

I will order a pre-sentence report
and psychiatric. If you want one, I wl
order one.

MR. MC GETTIGAN: Your Honor, if I
may, I am not sure, perhaps Mr. Stein or
the Court will know, there may be some
benefit in helping the institutional
system classify him.

MR. STEIN: I think we ought to have
one.

THE COURT: I will ask for a pre-sentence

## AFFIDAVIT

I Jesse Godfrey, petitioner pro se, do solemnly swear that the facts set forth in the enclosed Petition for Writ of Habeas Corpus and Consolidated Memorandum of Law in Support, are true to the best of my belief, knowledge, and information. I make this statement with clear understanding that I subject myself to the full penalties of law as is set forth in 28 U.S.C., § 1746.

## CERTIFICATE OF SERVICE

I, Jesse Godfrey, pro se petitioner herein, certify that I am serving the forgoing Petition for Writ of Habeas Corpus and Consolidated Memorandum of Law in Support, upon the person(s) indicated below and in the manner indicated. This Service satisfies the requirements of F.R.Civ.P., Rule 5(b)(2)(B), relating to Service.

Thomas Dolgenos, Esquire
Chief, Fedral Litigation
District Attorney's Office of Phila.
Three S. Penn Square
P.O. Box 3499
Philadelphia, PA 19107-3499
(215) 686-5725
TYPE OF SERVICE
()Personal(X)1st Class Mail

Date: November 28, 2007

Respectfully,

Mr. Jesse Godfrey

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FORM FOR USE IN APPLICATIONS FOR HABEAS CORPUS UNDER 28 U.S.C. § 2254
(eff. 12/1/04)

| | JESSE GODFREY | | PETITIONER |

(Full Name)   (Include name under which you were convicted)

vs.          Case No._____

(Supplied by the Court)

DAVID DIGUGLIELMO, et al. _____ RESPONDENT

(Name of Warden, Superintendent, Jailor, or authorized person having custody of petitioner)
and

THE DISTRICT ATTORNEY OF THE COUNTY OF ____ PHILADELPHIA ____

and

THE ATTORNEY GENERAL OF THE STATE OF ____ PENNSYLVANIA ____

ADDITIONAL RESPONDENT

Jesse Godfrey          BM-5499

Name          Prison Number

S.C.I. Graterford, P.O. Box 244, Graterford, PA 19426

Place of Confinement

(If petitioner is attacking a judgment which imposed a sentence to be served in the future, petitioner must fill in the name of the state where the judgment was entered. If petitioner has a sentence to be served in the future under a federal judgment which he wishes to attack, he should file a motion under 28 U.S.C. § 2255, in the federal court which entered the judgment.)

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

INSTRUCTIONS—READ CAREFULLY

1. You must include all potential claims and supporting facts for which you might desire to seek review because a second or successive habeas corpus petition cannot be filed except under very specific and rare circumstances requiring certification by the Third Circuit Court of Appeals as set forth in instruction # 13.

2. Your habeas corpus petition must be filed within the 1-year statute of limitations time limit set forth in 28 U.S.C. §2244(d)(1). (There are limited circumstances in which the petition may be amended, within the one-year time period, to add additional claims or facts, see Federal Rules of

Civil Procedure 15; or amended after the one-year period expires, in order to clarify or amplify claims which were timely presented, see United States v. Thomas, 221 F. 3d 430 (3d Cir.2000.)

3. Any false statement of a material fact in your petition, in a motion for leave to proceed in forma pauperis, or in any other motion you file in this case may serve as the basis for prosecution and conviction for perjury.

4. This petition must be typewritten, printed, or legibly handwritten and signed by you as the petitioner or by your representative on Page 11. You should answer all questions concisely in the proper space of the petition. If you need more room to answer any question, you may write on the reverse blank sides of the petition.

5. You may not attach additional pages to the petition. You do not have to list or cite the cases or law that you are relying on. If you do want to cite the cases and law you are relying on and make legal arguments, you should do so in a separate concise brief or memorandum which should be filed along with the petition.

6. When you file your petition, you must include a filing fee of $5.00. If you cannot pay the full filing fee, you must request permission to proceed in forma pauperis as explained in instruction # 8.

7. Your petition will be filed if you have followed these instructions and it is in proper order.

8. To request permission to proceed in forma pauperis without paying the full filing fee, you must completely fill out pages 12 through 18 of the petition. You should answer all questions and sign where indicated on Pages 12 and 18. You should see to it that an authorized prison official completes the certification on Page 19. You must prove that you cannot pay the full filing fee and other costs because of poverty and a discharge in bankruptcy will not excuse you from this requirement. The Court will let you know if you may proceed in forma pauperis.

9. Only final judgments entered by one state court may be challenged in a single petition. If you seek to challenge judgments entered by different courts either in the same state or in different states, you must file separate petitions as to each court.

10. As required by 28 U.S.C. § 2254(b)(1), you must have exhausted all claims that you are making in your petition. This means that every claim must have been presented to each level of the state courts. If you file a petition that contains claims that are not exhausted, the federal court will dismiss your petition. 28 U.S.C. § 2254(b)(2) provides that if it is perfectly clear that no colorable claims are presented, the federal court can also deny your petition on the merits.

11. As required by 28 U.S.C. § 2254(e)(1), a federal court, when considering your habeas corpus petition, must deem as correct a determination of fact made by a state court unless you rebut the presumption of correctness by clear and convincing evidence. Under 28 U.S.C. § 2254(e)(2), if

you have failed to develop the factual basis of a claim in state court proceedings, a federal court cannot hold an evidentiary hearing on that claim unless you show that:

> (i) the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the U.S. Supreme Court, that was previously unavailable,
>
> or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence.
>
> You must also show that the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found you guilty of the offense in question.

12. As required by 28 U.S.C. § 2244(b)(1), a federal court must dismiss any claim in a second or successive habeas corpus petition that *was* presented in a prior habeas corpus petition.

13. As required by 28 U.S.C. § 2244(b)(2), a federal court must dismiss any claim in a second or successive habeas corpus petition that *was not* presented in a prior habeas corpus petition unless you show:

> (A) the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the U.S. Supreme Court, that was previously unavailable;
>
> or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence, and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found you guilty of the offense in question.
>
> Before such a second or successive petition may be filed in the district court, however, the petitioner must move the court of appeals for an Order authorizing the district court to consider the petition. Petitioner's motion for such an Order must be determined by a three judge panel of the court of appeals, which must grant or deny the motion within 30 days. The court of appeals may grant the motion only if it determines that the petition makes a prima facie showing that it satisfies either (A) or (B) above.

14. 28 U.S.C. § 2254(i) provides that ineffectiveness of counsel during post-conviction, habeas corpus and P.C.R.A. proceedings in state or federal court may not be grounds for relief in your petition.

15 When the petition is fully completed, the original and four copies must be mailed to the Clerk of the United States District Court, Room 2609, 601 Market Street, Philadelphia, PA 19106. You must return all pages, including these instructions.

3

## PETITION

1. (a) Name and location of court which entered the judgment of conviction under attack: _____

    Court of Common Pleas, Philadelphia County, Pennsylvania

    (b) Name of Prosecutor: Lynne Abraham, Chief, District Attorney

    (c) Prosecution conducted by District Attorney's Office of __Philadelphia County, PA__ County

2. (a) Date of Judgment of conviction: February 14, 1994

    (b) Indictment number or numbers: CP 9007-1099 1/1

    Term: July Term, 1990 __ Criminal Case Number: 1099

3. Length of sentence: LIFE _____ Sentencing Judge: Hon. Theodore McKee

4. Nature of offense or offenses for which you were convicted: _____

    Second Degree Murder, Robbery and related Offenses

5. What was your plea? (Check one)
   (a) Not guilty (x)  (b) Guilty ( )  (c) Nolo contendere ( )

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details: _____

   _____ N/A _____

6. If you pleaded not guilty, what kind of trial?: (Check one)  (a) Jury ( )  (b) Judge only (x)

7. Did you testify at the trial?  Yes ( )  No (x)

8. Did you appeal from the judgment of conviction?  Yes (x)  No ( )

9. If you did appeal, answer the following:

4

(a) Name of court: Superior Court of Pennsylvania

(b) Result: _____ Judgment Affirmed

(c) Date of result and citation, if known: June 30, 1998, No. 1865 PHL 1997

(d) Grounds raised: Ineffective Assistance of Counsel and

   Trial court error and abuse of discretion

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:
   (1) Name of court: _____ N/A

   (2) Result: _____ N/A

   (3) Date of result and citation, if known: _____

   (4) Grounds raised: _____ N/A

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

   (1) Name of court: _____ N/A

   (2) Result: _____ N/A

   (3) Date of result and citation, if known: _____

   (4) Grounds raised: _____ N/A

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal? Yes ( x ) No ( )

11. If your answer to 10 was "yes," give the following information:

   (a) (1) Name of Court: Court of Common Pleas, Philadelphia County, PA

   (2) Nature of proceeding: Petition for Post Conviction Relief PCRA)

5

(3) Grounds raised: __Trial court error and abuse od discretion__

        __and, ineffective assistance of counsel__

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
  Yes ( )  No (x)

(5) Result: __Petition Dismissed as Untimely Filed__

(6) Date of result: __April 24, 2001__

  (7) Did you appeal the result to a higher court?    Yes (x)  No ( )

Court Name(s) __Superior Court of Pennsylvania__

Result(s) __Appeal Denied (without prejudice)__

        Due to counsel failing to file appellate brief
Result Date(s) __Appellate Rights reinstated__

(b) As to any __second petition__, application or motion give the same information:

  (1) Name of Court: __Court of Common Pleas, Philadelphia County, PA__

  (2) Nature of proceeding: __PCRA Petition__

_____

  (3) Grounds raised: __Trial court error and abuse of discretion__

        __and, ineffective assistance of counsel__

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
  Yes ( )  No (x)

(5) Result: __Appeal Rights Reinstated__

_____

6

(6) Date of result: January 15, 2002

(7) Did you appeal the result to a higher court?     Yes (x)  No ( )

Court Name(s) Superior Court of Pennsylvania

Result(s) Appeal Denied due to counsel failure to file brief

Result Date(s) January 15, 2002

(c) As to any third petition, application or motion give the same information:

(1) Name of Court: _____ N/A _____

(2) Nature of proceeding: _____ N/A _____

(3) Grounds raised: _____ N/A _____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ( )  No ( )

(5) Result: _____ N/A _____

(6) Date of result: _____ N/A _____

(7) Did you appeal the result to a higher court?     Yes ( )  No ( )

Court Name(s)_____ N/A _____

Result(s)_____ N/A _____

Result Date(s)_____ N/A _____

7

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

No other remedies are available in the State Court

12. State *concisely* every ground on which you claim that you are being held unlawfully. Give specific facts supporting each ground.

*CAUTION:* In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies, you should set them forth in this petition if you wish to seek federal relief. If you fail to set forth all such grounds in this petition, you may be barred from presenting them at a later date.

For information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted all your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

- (a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
- (b) Conviction obtained by use of coerced confession.
- (c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure, (where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim).
- (d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest, (where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim).
- (e) Conviction obtained by a violation of the privilege against self-incrimination.
- (f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
- (g) Conviction obtained by a violation of the protection against double jeopardy.
- (h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
- (i) Denial of effective assistance of counsel.
- (j) Denial of right of appeal.

8

A. Ground one: DID THE COURT PROSECUTE AN INCOMPETENT, WHO IN

NO WAY KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVED HIS

RIGHT TO A TRIAL?

Supporting FACTS (state *briefly* without citing cases or law):

There was more than a reasonable doubt as to petitioner's

at the time of trial but the court made no further inquiries.

The violated the petitioner's right to a fair trial under the

6th Amend, and Due Process and Equal Protection under the 14th

B. Ground two:

WHETHER THE PETITIONER BEING INCOMPETENT WHEN HE WAIVED
HIS RIGHT TO A TRIAL CONSTITUTES A MANIFEST INJUSTICE WHICH NO

CIVILIZED SOCIETY CAN TOLERATE?

Supporting FACTS (state *briefly* without citing cases or law):

The prosecutor never put forth any evidence that the petitioner

was competent to stand trial, and the evaluation use was

a hospital report from years before the crime showing that

petitioner was incompetent before the incident and after.

C. Ground three:

N/A

Supporting FACTS (state *briefly* without citing cases or law):

D. Ground four: N/A

Supporting FACTS (state *briefly* without citing cases or law):

9

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

None of the petitioner's gounds have ever been heard

due to all apeals having been filed untimely due to petitioner

incompetence or ineffective assistance of counsel.

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?    Yes ( )  No (x)

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a)  At preliminary hearing: Public Defenders

1441 Samson St., Philadelphia, PA 19102

(b)  At arraignment and plea: Court appointed   Unknown

(c)  At trial: __ Richard Hoy

address unknown

(d)  At sentencing: Richard Hoy

address unknown

(e)  On appeal: Richard Hoy (failed to file brief)

address unknown

(f)  In any post-conviction proceeding: PCRA - Scott Griffin

<sub>,</sub>    Scott Griffin's address unknown

(g) On appeal from any adverse ruling in a post-conviction proceeding : _____

Untimely appeal filed pro se dismissed _____

_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?    Yes ( )  No (X)

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?                 Yes ( )  No (X)

(a) If so, give name and location of court which imposed sentence to be served in the future:

_____ N/A _____

_____

(b) And give date and length of sentence to be served in the future: _____

_____ N/A _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?   Yes ( )  No ( )
_____ N/A _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on__November 28, 2007__    _Jesse Hodfree/_____
                    Date                        Petitioner's Signature or
                                        Signature of Petitioner's Representative

prepared by Stanley Phillips

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____N/A petitioner  is pro se_____
Signature of Attorney (if any)

11